```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| ROBERT COLE, et al., | CIVIL ACTION NO. 05-678 (MLC) |
| Plaintiffs | **MEMORANDUM OPINION** |
| v. |  |
| MCGUIRE BROTHERS CONSTRUCTION, INC., et al., |  |
| Defendants. |  |

**COOPER, District Judge**

Defendant McGuire Brothers Construction, Inc. ("McGuire") moves pursuant to Federal Rule of Civil Procedure ("Rule") 12(b) to dismiss the claims asserted against it, or in the alternative to transfer the action to the United States District Court for the Northern District of Oklahoma. (Dkt. entry no. 15.) The Court, for the reasons stated herein, will (1) deny the part of the motion seeking dismissal, and (2) grant the part of the motion seeking transfer of the action in its entirety to the Northern District of Oklahoma.

## BACKGROUND

McGuire is a commercial construction company incorporated in Oklahoma. (McGuire Br., at 2.) Its corporate offices are located in Tulsa, Oklahoma. Defendant McWane, Inc. ("McWane") manufactures pipe. (McWane Br., at 7.) McWane is incorporated in Delaware and its corporate offices are located in Birmingham, Alabama. (Compl. at 1.) It has several divisions including Clow

Company of Ohio, Tyler Pipe of Texas, and Atlantic States Cast Iron Pipe Company ("Atlantic States") of New Jersey. (McWane Br., at 8.)

McGuire ordered water pipes and other products from McWane on January 15, 2003. (Pls. Br., at 2; McWane Br., at 7.) To fill McGuire's order, McWane submitted a purchase order to Atlantic States. (McWane Br., at 7.) Atlantic States would ship the pipe from its plant in Phillpsburg, New Jersey to a McGuire construction site in Tulsa, Oklahoma. (Pls. Br., at 2-3.) Atlantic States contracted with SMP, Inc. ("SMP"), a carrier company located in New Jersey, to deliver the pipe. (Id. at 4.) Plaintiff Robert Cole ("Cole"), a New Jersey citizen, was a tractor trailer driver employed by SMP. (Id. at 2.) He delivered the McGuire order on February 7, 2003. (Id. at 4.) Cole was injured upon arrival at the construction site when the water pipe on the trailer fell while being unloaded. (Compl. at ¶ 4.) Cole's pelvic area and upper legs were crushed, resulting in several bone fractures, and requiring multiple surgeries. (10-4-05 Aff. of Robert Cole, at ¶ 9.)

Cole and his wife, Jacqueline, brought this action against McWane and McGuire to recover damages resulting from the accident. (Compl. at 3-4.) McGuire now moves to dismiss the claims asserted against it for lack of personal jurisdiction, or

in the alternative to transfer the action to the Northern District of Oklahoma.  The motion is opposed by both the plaintiffs, and McWane.

## DISCUSSION

McGuire argues that the claims asserted against it should be dismissed for lack of personal jurisdiction because it does not have minimum contacts with New Jersey.  (McGuire Br., at 4.)  The plaintiffs and McWane argue that McGuire has sufficient minimum contacts with New Jersey because McGuire received pipe shipped from New Jersey and provided shipping instructions to SMP.  (Pls. Br., at 12, 16; McWane Br., at 14.)

**I.  Motion to Dismiss for Lack of Personal Jurisdiction**

    **A. Personal Jurisdiction Requires Minimum Contacts**

Rule 4(e) allows a district court to assert personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where the district court sits. New Jersey's long-arm statute, N.J.R. 4:4-4, has been interpreted to permit jurisdiction over a non-resident defendant to extend as far as is constitutionally permissible.  DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981); see Avdel Corp. v. Mecure, 277 A.2d 207, 209 (N.J. 1971).  The Due Process Clause of the Fourteenth Amendment prevents a court from asserting personal jurisdiction over a defendant who does not have "certain minimum contacts with [the forum] such that the maintenance of

the suit does not offend 'traditional notions of fair play and substantial justice.'"  Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436-37 (3d Cir. 1987) (alteration in original) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 320 (1945)).

  The contacts must result from the defendant's purposeful conduct with the forum such that the defendant "should reasonably anticipate being haled into court" in the forum.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe, 326 U.S. at 319).  The purposeful availment requirement thus ensures that a defendant will not be haled into court solely as a result of "random," "fortuitous," or "attenuated" contacts, or the unilateral activity of another person.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); see also Hanson, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

  The plaintiff bears the burden of demonstrating sufficient contacts with the forum to justify the exercise of jurisdiction

4

when a defendant raises the absence of personal jurisdiction. See, e.g., N. Penn Gas Co. v. Corning Nat. Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990) (citations omitted).  A plaintiff may meet this burden by establishing that a court has either "general" or "specific" jurisdiction.  Provident Nat'l Bank, 819 F.2d at 437.  The plaintiff need only make a prima facie demonstration of jurisdiction by establishing with sufficient particularity the presence of contacts between the defendant and the forum.  See, e.g., Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).  A court, in examining whether the plaintiff has satisfied this prima facie burden, must resolve all disputes of material facts in favor of the non-moving plaintiff.  See, e.g., Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted).

### 1. General Jurisdiction

General jurisdiction exists when the defendant has contacts with a forum that are unrelated to the events forming the basis of the cause of action.  To establish general jurisdiction the plaintiff must show significantly more than mere minimum contacts with the forum state.  Provident Nat'l Bank, 819 F.2d at 437; Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp., 825 F.Supp. 1195, 1209 (D.N.J. 1993).  A plaintiff bears the "rigorous" burden of demonstrating that the defendant has

"'continuous and systematic' contacts with the forum state" such that the defendant should expect to be haled into court on <u>any</u> cause of action.  <u>Helicopteros Nacionales de Colombia. S.A. v. Hall</u>, 466 U.S. 408, 414-16 & 414 n.9 (1984) (emphasis added); <u>Provident Nat'l Bank</u>, 819 F.2d at 437.  The facts required to establish general jurisdiction must be "extensive and persuasive."  <u>Reliance Steel Prods. v. Watson, Ess, Marshall & Enggas</u>, 675 F.2d 587, 589 (3d Cir. 1982); <u>Decker v. Circus Circus Hotel</u>, 49 F.Supp.2d 743, 747 (D.N.J. 1999).

### 2.  Specific Jurisdiction

Specific jurisdiction over the defendant exists when the claim is directly related to or arises out of the defendant's activities with the forum.  <u>Burger King Corp.</u>, 471 U.S. at 472; <u>Dollar Sav. Bank v. First Sec. Bank</u>, 746 F.2d 208, 211 (3d Cir. 1984).  The activities must rise to the level of minimum contacts with the forum.  <u>Exton v. Our Farm, Inc.</u>, 943 F.Supp. 432, 438 (D.N.J. 1996).  "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State."  Burger King Corp., 471 U.S. at 472.  The defendant must have "'purposefully directed'" his activities at residents of the forum."  Id. at 473 (quoting Helicopteros Nacionales de Colombia S.A., 446 U.S. at 414).

6

**B. Minimum Contacts and Non-Resident Purchasers**

Courts distinguish between non-resident sellers and non-resident purchasers when evaluating minimum contacts for purposes of personal jurisdiction. Minimum contacts sufficient to exercise personal jurisdiction over a non-resident seller exist when the seller delivers its products into the stream of commerce with the expectation that its products will be bought by consumers in the forum state. World-Wide Volkswagen Corp., 444 U.S. at 297-98. In the case of a non-resident purchaser however, the fact that the non-resident purchaser caused activity in the forum state by placing an order or buying goods from the resident, alone, does not establish sufficient minimum contacts to permit the exercise of personal jurisdiction over the non-resident buyer. Lakeside Bridge & Steel Co. v. Mt. State Constr. Co., Inc., 597 F.2d 596, 603 (7th Cir. 1979) cert. denied 445 U.S. 907 (1980);[1] see also Hydrokinetics, Inc. v. Alaska Mech., Inc., 700 F.2d 1026, 1029 (5th Cir. 1983)

---

[1] The question of whether jurisdiction may be asserted over a non-resident corporation that has purchased goods from a resident has been before the Supreme Court multiple times, yet the Court has declined to grant certiorari. See Freedom Forge Corp. v. Jersey Forging Works, Inc., 549 F.Supp. 99, 100-01 (M.D. Pa. 1982) (providing list of such cases); see also Lakeside Bridge & Steel Co. v. Mt. State Constr. Co., Inc., 445 U.S. 907, 909, 911 (1980)(White, J., dissenting)(noting that the issue is one that has "deeply divided the federal and state courts" and is one of "considerable importance to contractual dealings between purchasers and sellers located in different States.").

(defendant knew the goods it ordered were to be manufactured in the forum, but court did not have jurisdiction because no performance by the defendant other than payment was to take place in the forum).

The Lakeside plaintiffs urged that the out-of-state defendant's act to order goods from a Wisconsin company with knowledge that the goods were likely to be manufactured in, and shipped from Wisconsin was a sufficient contact to confer jurisdiction over the defendant in Wisconsin.  597 F.2d at 600. The Seventh Circuit, in holding that the court did not have jurisdiction over the defendant, noted that the plaintiff was in absolute control over where it would conduct its activity, and the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."  Id. at 600, 603; see also Allied Leather Corp. v. Altama Delta Corp., 785 F.Supp. 494, 501 (M.D. Pa. 1992) (declining to exercise jurisdiction; noting "[b]ecause at some point the buyer became aware that the materials were to be produced in Pennsylvania [the forum state] does not evidence an intent on the part of the defendant to inject itself into the commerce of Pennsylvania.").  The defendant's use of interstate mail and telephone service to communicate with the plaintiff in Wisconsin also did not qualify as sufficient contacts to confer jurisdiction.  Lakeside, 597 F.2d at 603-04.  The fact that the

8

goods were to be shipped "F.O.B. Sellers Plant Milwaukee Wisconsin" was given little weight because

> [i]f the presence of goods on which the defendant bears the risk of loss in a state is a sufficient contact to give that state jurisdiction over the defendant . . . any state through which the goods pass in transit could exercise jurisdiction over the defendant.  Such a holding would constitute an unwarranted expansion of the due process limits on the exercise of jurisdiction.

Lakeside, 597 F.2d at 603-04.  But see Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp., 921 F.Supp. 1206, 1210 (D. Vt. 1996) (finding that "[p]laintiff's shipment of the ice cream F.O.B. Waterbury, Vermont [the forum] shows that the Defendant availed itself of the protection of the laws of Vermont and hence submitted to personal jurisdiction.").

Jurisdiction over a non-resident buyer may be proper when the buyer becomes more than a "passive purchaser."  Tamaqua Cable Prod. Corp. v. Dunlap Elecs, Inc., 531 F.Supp. 388, 390 (E.D. Pa. 1982) (out-of-state defendant did not purposefully avail itself of the privileges of the forum because it was merely a passive purchaser of products manufactured in the forum state).  "To the extent the buyer vigorously negotiates, perhaps dictates the contract terms, inspects production facilities, and otherwise departs from the passive buyer role the exercise of jurisdiction over the foreign buyer becomes more reasonable."  Id. at 390-91 (citation and quotes omitted); see also Allied Leather Corp., 785 F.Supp. at 500 (distinguishing a purchaser

who "merely ratif[ies] the terms as presented, for instance, where one orders from the L.L. Bean catalogue" from one who engages in vigorous negotiations and haggles over the smallest terms).

A contract alone between a resident and a non-resident, does not automatically establish sufficient minium contacts to exercise jurisdiction over the non-resident. Burger King Corp., 471 U.S. at 478. A district court decision in this circuit has suggested four factors to be considered when evaluating jurisdiction over a non-resident purchaser are (1) the character of any pre-contract negotiations, (2) the location of the negotiations, (3) the terms of the sales agreement, and (4) the type of goods sold. Strick Corp. v. A.J.F. Warehouse Distrib., Inc., 532 F.Supp. 951, 957 (E.D. Pa. 1982). These factors weigh in favor of jurisdiction when (1) the defendant initiated the contract with the resident seller, (2) the defendant visited the forum state, (3) the contract will be substantially performed in the forum, and the law of the forum governs the agreement, and (4) the goods at issue are more sophisticated commercial goods, and not mail-order consumer goods. Id. at 959; see also Countess v. Pool Fact, Inc., No. 03-1481, WL 22992155, at *2-*5 (M.D. Pa. 2003) (finding no personal jurisdiction over defendant based on Strick factors).

### C. McGuire's Contacts with New Jersey

This Court cannot exercise personal jurisdiction over McGuire because McGuire does not have sufficient contacts with New Jersey. McGuire is incorporated under the laws of, and has its principal place of business and corporate headquarters in Oklahoma. (3-7-05 McGuire Aff., at ¶ 2.) McGuire has performed no work in New Jersey and has no license to do business in New Jersey. (Id. at ¶¶ 3-5.) It holds no property, has no offices, and has not assigned an employee to work in New Jersey. (Id. at ¶ 4.)

The plaintiffs and McWane argue that this Court can exercise specific jurisdiction over McGuire because McGuire knew that the pipe it ordered was coming from Atlantic States in New Jersey, and the cause of action arises from the pipe delivery. (Pls. Br., at 13; McWane Br., at 14.) They emphasize that the sales order and the bill of lading accompanying the pipe, like bills of lading accompanying prior orders, indicated that the pipe would be coming from Atlantic States in New Jersey. (Id.)[2]

---

[2] Both the plaintiffs and McWane concede that the Court cannot exercise general personal jurisdiction over McGuire, but argue the action arises from or relates to McGuire's contacts with New Jersey and forms a basis for the exercise of specific jurisdiction. (Pls. Br., at 11; McWane Br., at 12-13.)

Knowledge that the pipe was coming from New Jersey, however is not enough to exercise jurisdiction over McGuire.[3] Like the defendants in Tamaqua and Allied Leather, McGuire was a passive purchaser. Considering the four factors outlined in Strick, there is no indication that any McGuire employees visited the Atlantic States foundry, interacted directly with Atlantic States, or vigorously negotiated the purchase terms. (Pls. Br., at 2; McWane Br., at 7; McGuire Br., at 3.) McGuire contacted and entered into an agreement to purchase pipe with McWane in Alabama, not Atlantic States in New Jersey. (Pls. Br., at 2, 12; McWane Br., at 7.) McGuire did not speak to anyone at Atlantic States with regard to the order. (8-8-05 McGuire Dep., at 102.) McWane sent the purchase order to Atlantic States in New Jersey, and sent the sales order to McGuire in Oklahoma. (Pls. Br., at Ex. A; McWane Br., at 7.) The sales order was written on McWane letterhead, bearing its Birmingham, Alabama address. (Id.) No vigorous negotiation took place. The order indicates that the sale is contingent on the buyer's acceptance of "our [McWane's] terms and conditions." (Id. (emphasis added).) Those conditions include, (1) any claims arising under

---

[3] McGuire argues that it was unaware that Atlantic States was in New Jersey. (McGuire Br., at 4; 8-8-05 McGuire Dep., at 105.) The Court, however must look at the facts in the light most favorable to the non-moving parties, and will assume McGuire knew Atlantic States was in New Jersey. (Pls. Br., at 16; McWane Br., at 15.)

the sales order are governed by Alabama law and to be tried in the courts of Alabama "to which jurisdiction Buyer hereby submits," and (2)"goods will be shipped by the method and via carrier Seller believes dependable." (Id. (emphasis added).) Pipe is not a mere "mail-order consumer good," but the other Strick factors weigh against jurisdiction.

McGuire, as the defendant in Lakeside, did not control where the activity pursuant to the sales order would take place. The decision to ship the pipe from Atlantic States was a unilateral decision by McWane. (McWane Br., at 8-9.) McGuire did not require the pipe to come from Atlantic States. "Where the pipes were shipped from did not matter to Mr. McGuire, as long as he received the pipes he had ordered." (Pls. Br., at 7; McWane Br., at 8-9.) McGuire had previously accepted pipe shipments from McWane divisions in Ohio and Texas. (Id. at 8.)

The decision to hire SMP, a New Jersey carrier company, to transport the pipe from New Jersey to Oklahoma was the decision of Atlantic States. (Pls. Br., at 4; 3-7-05 McGuire Aff., at 2.) As in Lakeside, Cole's use of the phone to call McGuire to obtain delivery instructions from McGuire while en route to the construction site is also not enough to confer jurisdiction. Any "performance" on the part of McGuire took place in Oklahoma where the phone call was received and the pipe was unloaded, not in New Jersey. (Pls. Br., at 18.) The fact that the pipe was

13

shipped F.O.B. Seller's Plant is given little weight.  Any contact McGuire had with New Jersey was "the unintended consequence of its relationship[] with [an] entit[y] [McWane] . . . based in other jurisdictions [Alabama]."  Allied Leather Corp., 785 F.Supp. at 499.  Given all of these facts, McGuire's actions have not created a substantial connection with New Jersey such that the exercise of jurisdiction over it would satisfy "traditional notions of fair play and substantial justice."  Int'l Shoe Co, 326 U.S. at 320.

## II. McGuire's Alternative Motion to Transfer

McGuire argues in the alternative that the action should be transferred to the Northern District of Oklahoma if its motion to dismiss is denied.[4]  (McGuire Br., at 15.)  Both the plaintiffs and McWane oppose transfer, arguing that New Jersey is the most appropriate forum.  (McWane Br., at 23.)

### A. Transfer Standard

Two statutes are relevant to the transfer of this action. 28 U.S.C. Section 1631 provides:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought.

---

[4] The Northern District of Oklahoma sits in Tulsa, Oklahoma.

28 U.S.C. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

An action might have been brought in another district, if (1) venue is proper in the transferee district, and (2) the transferee district can exercise jurisdiction over all the parties. Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970). In a civil action based on jurisdiction under Section 1332 venue can be laid in (1) any district where any defendant resides, (2) a district in which a substantial part of the events or omissions giving rise to the claims occurred, or (3) a district in which the defendants are subject to personal jurisdiction at the time the action is commenced if there is no other district where the action can be brought. 28 U.S.C. § 1391. In situations where venue may be proper as to one defendant, but not another, the court may (1) transfer the action in its entirety, or (2) sever the claims, retain jurisdiction over one defendant, and transfer the claims as to the other. Cottman Transmission Sys. Inc. v. Martino, 36 F.3d 291, 296 (3d Cir. 1994). "The court should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." Sun Belt Corp. v. Noble,

15

Denton & Assocs., Inc., 5 F.3d 28, 33-34 (3d Cir. 1993) (internal citations omitted).

The moving party must show that the alternative forum is more appropriate than the present one. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Courts balance various private and public interests when deciding whether to transfer pursuant to § 1404(a). Jumara, 55 F.3d at 879. Such private interests may include plaintiff's choice of forum, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, the cost of attendance of willing witnesses, the possibility of a jury view of the premises, the location of books and records to the extent they may be unavailable in one fora, and whether the claim arose elsewhere. See Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1946); Jumara, 55 F.3d at 879. The public interests may include enforceability of the judgment; practical considerations that could make the trial easy, expeditious or inexpensive; relative administrative difficulty in the two fora resulting from court congestion; local interest in deciding local controversies at home; public policies of the fora; and familiarity of the trial judge with the applicable state law. Jumara, 55 F.3d at 879-80. The burden is on the defendant to establish the need for transfer. Id. at 879. In general, the plaintiff's choice of forum should not be lightly disturbed. Id.

### B. Transfer as Applied to this Case

Transfer of this action in its entirety to the Northern District of Oklahoma is appropriate.  First, venue is proper there because the accident that gave rise to the plaintiffs' claims occurred in Tulsa, Oklahoma.  (Compl., at 2.)  Second, the Northern District of Oklahoma, unlike the District of New Jersey, can exercise jurisdiction over both defendants.  McGuire is a resident of, and conducts business in Oklahoma.  (Id. at 1.)  McWane has sufficient minimum contacts with Oklahoma because its products are sold to residents of Oklahoma.  (McGuire Br., at 1-2.)  By placing its products into the stream of commerce, knowing that they were being purchased by Oklahoma residents, McWane has purposefully availed itself of the privilege of conducting activities in Oklahoma.  (McWane Br., at 7.)

Private and public interest factors also favor transfer.  A substantial part of the claim arose in Oklahoma, the witnesses to the accident are in Oklahoma, and the accident scene itself is in Oklahoma.  Oklahoma judges and juries have an interest in deciding such local controversies.  New Jersey's connection to the action is remote and Oklahoma law would likely apply.  The plaintiff's choice of forum ordinarily is given deference, but it deserves less weight when the operative events occurred elsewhere.  Edwards v. Texaco Inc., 702 F.Supp. 101, 103 (E.D. Pa. 1988); Finkelstein v. Simms, No. 96-6864 1997 WL 288610, at

*5 (E.D. Pa. May 21, 1997). Here, while there is an allegation that the pipe was improperly loaded onto the trailer in New Jersey, the accident itself causing the plaintiffs' injuries occurred in Oklahoma. (Compl., at ¶ 3.)

Transfer is also in the interest of justice since this Court lacks jurisdiction over McGuire. The Court recognizes that it has jurisdiction over McWane. It could retain the claims asserted against it, but severance is not appropriate because McWane is so involved in the controversy. Transfer would result in the same issues being litigated in two different fora.

## CONCLUSION

The Court, for the reasons stated supra, will deny the part of McGuire's motion seeking dismissal, but grant the part of the motion seeking transfer of the action to the Northern District of Oklahoma. An appropriate order will be issued.

                                                 s/ Mary L. Cooper
                                                 **MARY L. COOPER**
                                                 United States District Judge